

The following constitutes the order of the Court.
Signed: August 14, 2019

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>CHRISTOPHER DUNCAN WETTERSTEN,<br>    Debtor. | Case No. 17-42458 CN<br>Chapter 7 |
| FRANK DITTO,<br>    Plaintiff,<br>vs.<br>CHRISTOPHER DUNCAN WETTERSTEN,<br>    Defendant. | Adversary No. 18-4052<br><br>**ORDER DETERMINING DISCHARGEABILITY OF DEBT** |

On August 6 and 12, 2019, the court conducted a trial in this adversary proceeding. All appearances were noted on the record. Plaintiff Frank Ditto claims that he was severely injured on June 29, 2012 when defendant Christopher Wettersten tossed a live bullet into a fire pit, which then exploded and struck him in the throat. Ditto argues that his claim is non-dischargeable under Bankruptcy Code § 523(a)(6). Wettersten denies tossing a bullet into the fire pit. While he admits that he threw several "blanks" into the fire, he argues that the blanks were incapable of and did not strike Ditto. The following constitutes this court's findings of fact and conclusions of law of this core matter under Federal Rule of Bankruptcy Procedure 7052(a)(1).

On June 29, 2012, Ditto, a former paralegal and aspiring actor, accompanied a friend to a party at 4001 San Leandro Street in Oakland, California. The San Leandro Street property housed an artist's colony, and Wettersten, a landscaper by day and an artisan at night, lived in Unit 12 of the

warehouse. The party was an early July 4th celebration, and it was primarily held in the San Leandro Street property's parking lot. The party included a sizeable mobile "fire pit," which was still live when Ditto arrived sometime late on the evening of June 29th.[1] A crowd of approximately 15 to 20 people were milling around the fire pit when Ditto arrived, and Ditto and his friend joined the crowd.

Ditto claims that he was "shot" within 15 - 20 minutes of arriving at the party. He testified that while talking to a few guests, Wettersten interrupted his conversation and displayed a World War II rifle round to Ditto, which Wettersten said he was going to toss into the fire pit. Ditto testified that he told Wettersten not to throw the bullet into the fire, and that he decided to leave the pit when he realized that Wettersten was ignoring his request. Ditto was struck by a metallic projectile in the side of his throat while he was walking along (and away) from the fire pit. While certain hospital records indicate that Ditto described the object as a "rubber bullet," the hospital x-rays and surgical report corroborate that Ditto was struck by a cylindrical metallic object. Ditto testified that at least two persons (Kevin Dyer and Chris Ronzo) were present when Wettersten showed him the bullet. Neither of these individuals testified at trial (or otherwise). In addition, Ditto did not actually see Wettersten toss a bullet into the fire pit.

Wettersten is an amateur gun collector with some knowledge regarding ballistics. On the date in question, Wettersten owned two handguns and four rifles (most of which dated from World War II and the early cold war era) and related ammunition. He also kept "blanks" in his unit that were suitable for theatrical prop guns. Wettersten described the blanks as metallic exterior casings containing some gun powder with a plastic cap. He explained that the blanks were essentially harmless because they did not contain any projectile (like a bullet). Wettersten testified that some of the other party goers were setting off fireworks and that he decided to join the festivities by tossing some of his blanks (the exact number of which were uncertain) into the fire pit. Wettersten stated that he had thrown blanks into fires on several previous occasions, and that blanks, when exposed to a fire, generate sparks and some firecracker-like noise. Wettersten testified that no one had ever been injured by this activity, and that he anticipated that these blanks would create the same effect.

---

[1] The fire pit was rectangular, made from metal and approximately 4 feet long.

Wettersten denied showing Ditto any live ammunition, and adamantly denied tossing any ammunition into the fire pit. He was fully aware of the dangers of exposing live ammunition to a hot flame. Other than some possible party chitchat that evening, Ditto and Wettersten were complete strangers when Ditto was injured.

Wettersten testified that he and a few other persons threw his blanks into the fire pit. Wettersten stated that five persons (including Ditto) were standing or sitting near the fire pit at that time, and that he was on the opposite side of the fire pit from Ditto. Ditto was struck a short period of time after the last blank was tossed into the pit. The first, critical question herein is what struck Ditto? Ditto has not established by a preponderance of the evidence that he was struck by one of Wettersten's bullets. No third party saw Wettersten with a bullet that evening, the hospital ENT consult note (Exhibit I) states that the metallic object "does not appear consistent with a hole fragment of a bullet," and the size and shape of the ammunition owned by Wettersten significantly differed from the object that lodged in Ditto's throat. Ditto also did not have the foresight to retrieve the object from S.F. General Hospital and retain a ballistics expert to testify regarding its origin.

Without expert testimony, there is also no *compelling* evidence that a blank caused Ditto's injury. However, given the timing of the injury, the shape of the metallic object, and the contents of the fire pit itself, the most rational explanation is that something Wettersten threw into the fire pit struck Ditto, and the preponderance of the evidence shows that this object was a blank.

Delene Hessinger, who jointly managed the 4001 San Leandro Street property, testified that the firewood and kindling used that night was inspected before use, and that the wood was "safe." The court assumes, therefore, that the wood did not contain any nails or other metallic objects that could, under extreme heat, become a dangerous projectile. In addition, Ditto was struck shortly after the last of the blanks was tossed into the fire. Finally, these blanks had cylindrically shaped metallic casings. These facts lead this court to conclude that it was an exploding blank which somehow struck Ditto.[2]

---

[2] Only three percipient witnesses testified regarding the fire pit incident: Ditto, Wettersten, and Zelix Slocum. Much of Slocum's testimony was consistent with Wettersten's statements. To the extent that his testimony veered more favorably for the defense than Wettersten's own testimony,

Ditto suffered significant injuries as a result of the incident.

Under Bankruptcy Code §523(a)(6), an individual debtor may not discharge a debt resulting from a willful and malicious injury to another entity or to the property of another entity. An injury is 'willful' if the debtor had a subjective motive to inflict the injury or believed that injury was substantially certain to occur as a result of his conduct. *Carillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002); *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001). A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Jercich, supra* at 1209. Ditto must satisfy these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991). This evidentiary standard requires a plaintiff to establish that each element of his claim "more likely than not" exists. *In re Blaskey*, 2015 Bankr. LEXIS 627, *11 (Bankr. 9th Cir. 2015), citing *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699-701 (9th Cir. 2007). Ditto has not met this standard. First, Wettersten's conduct was not willful. The evidence was clear that a) Wettersten bore no ill will towards Ditto and did not intend to harm him when he threw the blanks into the fire, and b) given his experience with blanks, Wettersten did not believe that his conduct was substantially certain to injure him. In fact, Wettersten believed that tossing the blanks into the fire would only create a loud bang and some sparkles. He was as surprised as Ditto with the outcome. Moreover, there was no circumstantial evidence indicating otherwise. Wettersten's conduct also was not malicious. While Wettersten's act probably violated Oakland's anti-firework ordinances, his "wrongful act" was not the type that would necessarily cause Ditto's injury. Ditto's injuries were accidental, not malicious.

Accordingly, judgment shall be entered in Wettersten's favor, and Wettersten shall submit an appropriate judgment.

**\*\* END OF ORDER \*\*\***

---

the court discounts it, given Slocum's clear bias towards his friend.

Adversary No. 18-4052

**COURT SERVICE LIST**

John F. Lee
15 Boardman Place, 2nd Floor
San Francisco, CA 94103

Other recipient is an ECF participant